David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*ERIC STEINMETZ*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ERIC STEINMETZ, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| FMMR INVESTMENTS, INC. D/B/A RAPID CASH, | **COMPLAINT** |
| Defendant. | |

For this Complaint, the Plaintiff, ERIC STEINMETZ, by undersigned counsel, states as follows:

**<u>JURISDICTION</u>**

1.     This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone

without consent, thereby violating the TCPA.

1.      This action also arises out of Defendant's violations of Nevada Revised Statutes Chapter 604A.010 *et seq*. ("NRS 604A"), and the harassment of Plaintiff by the Defendant and its agents in their illegal efforts to collect a high-interest loan as defined under this Chapter.

2.      Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3.      Defendants have through their conduct in collecting a loan governed by NRS 604A violated NRS 604A.415.

4.      Defendant FMMR INVESTMENTS, INC. dba RAPID CASH dba SPEEDY CASH is a "licensee" as that term is defined by NRS 604A.

5.      NRS 604A.415 incorporates the Fair Debt Collection Practices Act (FDCPA), as amended, 15 U.S.C. §§ 1692a to 1692j, which applies herein "even if the licensee is not otherwise subject to the provisions of the [FDCPA]."

6.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of

the events or omissions giving rise to the claim occurred in this District, and

Defendant regularly conducts business in this District.

## PARTIES

8.     The Plaintiff, ERIC STEINMETZ ("Plaintiff" or "Mr. Steinmetz"), is

an adult individual residing in Las Vegas, Nevada.

9.     Plaintiff is, and at all times mentioned herein was, a "person" as

defined by 47 U.S.C. § 153(39).

10.     Defendant FMMR INVESTMENTS, INC. dba RAPID CASH

("Defendant" or "RAPID CASH"), is doing business in the State of Nevada with a

place of business located at 4343 N. Rancho Drive, Suite 150, Las Vegas, NV

89130 and is licensed with the State of Nevada, Department of Business &

Industry Financial Institutions Division, as license No. CDTH10326.

11.     Defendant is and at all times mentioned herein was, a corporation and

is a "person," as defined by 47 U.S.C. § 153 (39).

12.     RAPID CASH at all times acted by and through one or more of the

Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

**A. The Debt**

13.     Plaintiff allegedly incurred a financial obligation (the "Debt") to

Rapid Cash (the "Creditor").

14.    The Debt was a "high-interest loan" as defined by NRS 604A.0703.

15.    NRS 604A.415 provides that:

> If a customer defaults on a loan, the licensee may collect
> the debt owed to the licensee only in a professional, fair
> and lawful manner. When collecting such a debt, the
> licensee must act in accordance with and must not violate
> sections 803 to 812, inclusive, of the federal Fair Debt
> Collection Practices Act, as amended, 15 U.S.C. §§
> 1692a to 1692j, inclusive, even if the licensee is not
> otherwise subject to the provisions of that Act.

16.    As such, a violation of the Fair Debt Collection Practices Act
(FDCPA) a though j is also a violation of NRS 604A.415.

## B. RAPID CASH Engages in Harassment and Abusive Tactics

## FACTS

17.    Struggling to meet his financial obligations, in 2014 Mr. Steinmetz
made a mistake he would soon regret when he applied for and received a high
interest loan from the Defendant (the "Debt").

18.    Over the course of several years, Mr. Steinmetz faithfully repaid his
loan with RAPID CASH, which RAPID CASH would then renew and Mr.
Steinmetz would continue to repay.

19.    However, in April 2016 Mr. Steinmetz found himself struggling to
repay all his household bills as they came due.

20.    Mr. Steinmetz then consulted with and subsequently hired a
bankruptcy attorney.

21.     Thereafter, Mr. Steinmetz, now in contemplation of filing Chapter 13 Bankruptcy, ceased payments to his creditors, including RAPID CASH.

22.     Accordingly, Mr. Steinmetz defaulted on the Debt.

23.     On April 13, 2016 at 3:15 p.m., Plaintiff called the Defendant and spoke with a RAPID CASH representative (the "April 13, 2016 Call").  During this call the Plaintiff advised RAPID CASH to cease all further communications to him regarding the debt as to cease any further calls to his cell phone.

24.     The RAPID CASH representative directed Plaintiff to call Defendant's Recovery and Inventory department at phone number 1-877-211-0217.

25.     On April 14, 2016 at 12:47pm Plaintiff attempted to call Defendant's Recovery and Inventory department at phone number 1-877-211-0217. However, a RAPID CASH representative did not answer the call and the call went to voicemail, where Plaintiff was unable to leave a message due to an error with Defendant's voicemail system.

26.     Accordingly, on April 14, 2016 at 5:45 pm Plaintiff sent a written cease and desist demand (via email and fax) to the Defendant formally revoking RAPID CASH's "right" (to the extent it had a right) to communication with the Plaintiff about the Debt (the "C&D Request").

27.     The C&D Request further advised RAPID CASH that the Plaintiff

retained a lawyer and directed RAPID CASH that further communication

regarding the Debt was to be sent to Plaintiff's lawyer.

28.   RAPID CASH received the C&D Request.

29.   Notwithstanding the foregoing, RAPID CASH persisted in debt

collection communications directly with the Plaintiff on a near-daily basis.

30.   Specifically, RAPID CASH continued placing automated phone calls

and other collection communications despite his efforts to restrict RAPID CASH's

collection communications.

31.   In specific, the Plaintiff documented (at least) the following illegal

communications from RAPID CASH:

    a. On April 18, 2016, at 10:10am Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). A RAPID CASH representative named "Heidi" left a thirty-three second automated voicemail which gave a phone number of 800-856-2911 for Plaintiff to contact.

    b. On April 18, 2016, at 10:51am Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message. *This was the second time Plaintiff was contacted by Defendant that day*.

    c. On April 20, 2016, at 8:51am Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message.

    d. On April 20, 2016, at 9:28am Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message. *This was the second time Plaintiff was contacted by Defendant that day*.

e. On April 21, 2016, at 2:59pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message.

f. On April 21, 2016, at 7:31pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). A RAPID CASH representative named "Heidi" left a thirty-three second automated voicemail which gave a phone number of 800-856-2911 for Plaintiff to contact. ***This was the second time Plaintiff was contacted by Defendant that day***.

g. On April 22, 2016, at 2:45pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message.

h. On April 22, 2016, at 4:38pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). A RAPID CASH representative named "Heidi" left a thirty-three second automated voicemail which gave a phone number of 800-856-2911 for Plaintiff to contact.

i. On April 22, 2016, at 5:06pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). A RAPID CASH representative named "Heidi" left a thirty-three second automated voicemail which gave a phone number of 800-856-2911 for Plaintiff to contact. ***This was the third time Plaintiff was contacted by Defendant that day***.

j. On April 23, 2016, at 10:34am Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). A RAPID CASH representative named "Heidi" left a thirty-three second automated voicemail which gave a phone number of 800-856-2911 for Plaintiff to contact.

k. On April 23, 2016, at 4:37pm Plaintiff received a phone call from Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message. ***This was the second time Plaintiff was contacted by Defendant that day***.

l. On April 25, 2016, at 4:27pm Plaintiff received a phone call from

Defendant on his cell phone from 702-266-9488 (a RAPID CASH identifier). Defendant hung up and did not leave a message.

32.    Between April 18, 2016 and April 25, 2016, Plaintiff was called twelve times by Defendant to collect the Debt.

33.    Plaintiff was contacted nearly every day (often multiple times in a single day) after the loan was in default and, after, the Defendant was placed on notice (through – at least – the C&D Request and his verbal demands) that he revoked permission to communicate with him about the Debt and instructed Defendant to contact his counsel.

34.    Based on RAPID CASH's forgoing conduct, it appears a certainty that the Plaintiff will continue enduring illegal debt collection conduct and this lawsuit results.

## C. **Plaintiff Suffered Actual Damages**

35.    The Plaintiff has suffered and continues to suffer actual damages as a result of RAPID CASH's unlawful conduct.

36.    Further, Plaintiff alleges that Defendants actions at all times herein were "willful."

37.    As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and

illegal collection efforts.  Plaintiff has also lost the use of personal and family time while enduring these frustrations.

38.     Plaintiff has also contemplated filing bankruptcy as a result of Defendant's illegal conduct to stop harassing calls in the future.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

39.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

40.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

41.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called,
> using a random or sequential number generator; and

> (B)     to dial such numbers.

42.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

43.     According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.  The

FCC also recognized that wireless customers are charged for incoming calls.[1]

44.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

45.     On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent".  *Id*. at ¶ 30.

46.     Further, consumers (like the Plaintiff) may revoke consent through any reasonable means.  *Id*. at ¶ 47.

47.     Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.  *Id*. at ¶ 58.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

48.     Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

49.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing.  *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL TCPA COUNTS

50.     Within the four years prior to filing the instant complaint, the Plaintiff received numerous calls from the Defendant from the following phone number: (702) 266-9488.

51.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

52.     Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "9603" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).  Specifically, there were slight pauses before each call connected.

53.     On or about April 14, 2016, Plaintiff instructed Defendant or its agent(s) not to call the Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

54.     Moreover, Defendant did not have prior express consent to place any

automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

55.     However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

56.     Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

57.     The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

58.     Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

59.     Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

60.     The Plaintiff suffered actual harm and loss, since the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

61.     Plaintiff also suffered from an invasion of a legally protected interest by

placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy. The TCPA protects consumers from this precise behavior.

62.     Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

63.     Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

64.     The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Violations of the FDCPA
### (as incorporated through NRS 604A.415)

65.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.     Any violation of 15 U.S.C. §§ 1692a through j constitutes a violation of NRS 604A.415.

67.     The Defendants' conduct violated 15 U.S.C. § 1692c(a)(2) in that Defendant contacted the Plaintiff after it knew Plaintiff was represented by an attorney.

68.     The Defendants' conduct violated 15 U.S.C. § 1692c(c) in that Defendant engaged in communication with the Plaintiff after written notification that the Plaintiff refuses to pay the Debt, or that the Plaintiff requested the Defendant to cease communication with the Plaintiff.

69.     The Defendants' conduct violated 15 U.S.C. § 1692d in that Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.

70.     The Defendants' conduct violated 15 U.S.C. § 1692e in that Defendants engaged in false, deceptive or misleading behavior in connection with the collection of a debt.

71.     The Defendants' conduct violated 15 U.S.C. § 1692e(5) in that Defendants threatened to take action against the Plaintiff which it could not legally take or did not intend to take in collection of a debt.  Specifically, by continuing collection action against the Plaintiff when such rights were restricted through the Plaintiff's oral demands and the C&D Request.

72.     The Defendants' conduct violated 15 U.S.C. § 1692e(10) in that Defendants employed various false representations and deceptive means to collect a debt.

73.     The Defendants' conduct violated 15 U.S.C. § 1692e(11) in that Defendants communications with Plaintiff failed to include a "mini-Miranda"

warning, "This is an attempt to collect a debt" and/or that the "communication is from a debt collector".

74.     The Defendants' conduct violated 15 U.S.C. § 1692f in that Defendants used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiff.

75.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA (and therefore also constitute violations of NRS 604A.415), including every one of the above-cited provisions.

76.     The Plaintiff is entitled to damages as a result of Defendants' violations.

77.     The Plaintiff has been required to retain the undersigned as counsel to protect the Plaintiff's legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq.*)

78.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

79.     Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

80.    Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

81.    As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

82.    Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

**Knowing and/or Willful Violations of the
Telephone Consumer Protection Act,
(47 U.S.C. § 227, *et seq.*)**

83.    Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

84.    Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

85.    Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

86.    As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

87.     Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants awarding the Plaintiff:

1.  for consequential damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

2.  for statutory damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

3.  for an award of actual damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

4.  for an award of punitive damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

5.  for an award of costs of litigation and reasonable attorney's fees pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

6.  "void" the Debt, bar Defendant from collecting thereon, and compel the Defendant to turnover any principal, interest or other charges or fees collected on the Debt pursuant to NRS 604A.900(1).

7.  Two (2) times any actual damages pursuant to NRS 41.1395;

8.  Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

9.  Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

10. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

11. any other legal or equitable relief that the court deems appropriate.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: June 13, 2016

Respectfully submitted,

By  /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*ERIC STEINMETZ*